IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| VINCENT E. ZIRKER, | ) | |
| | ) | |
| Movant, | ) | CASE NO. 3:09-0403 |
| | ) | JUDGE HAYNES |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM

Movant, Vincent E. Zirker, filed this action under 28 U.S.C. § 2255 seeking to set aside his convictions of conspiracy to possess with the intent to distribute; possession of five (5) kilograms or more of crack cocaine with the intent to distribute; possession of a detectible about of cocaine; possession of a firearm in connection with a drug offense and felon in possession of a weapon. Movant appealed his convictions that the Sixth Circuit affirmed, <u>Zirker v. United States</u>, 253 Fed. Appx. 573 (6th Cir. 2007), but the Movant's original sentence of 262 months was set aside. <u>Id.</u> at 579. Upon remand, Movant was resentenced to 130 months.

Movant's claims are for ineffective assistance of his trial and appellate counsel. As to Movant's specific claims, Movant asserts his trial counsel's failures: (1) to object to witness testimony and documentary evidence about Movant's rental of a storage unit; (2) to impeach government witnesses; (3) to object to the court's jury instruction on direct and circumstantial evidence; (4) to interview government witnesses; (5) to present mitigating evidence provided by Movant; (6) to file pre-trial motions based on Movant's pro se motions; (7) to meet with Movant

1

before trial; (8) to file a motion to suppress evidence based on government misconduct; (9) to request a severance; (10) to object to the verdict form; (11) to object to the government's closing arguments; (12) to raise a Brady violation; (13) to raise a Fourth Amendment violation based on an alleged improper traffic stop; (14) to raise mitigating evidence at the preliminary examination; (15) to challenge the suggestive photograph identification at trial; (16) to object at sentencing to information in the presentence report; and (17) to object to the drugs and gun admitted at trial. As to his appellate counsel, Movant contends that his counsel failed to present Movant's Fourth Amendment claim on his direct appeal.

## A. Review of the Record

Prior to his trial, Movant expressed disagreement and dissatisfaction with his defense counsel and after multiple status conferences on Movant's complaints, the district court removed Movant's first appointed counsel (United States v. Zirker, 3:04cr74 at Docket Entry No. 26) and appointed new counsel. (Case No, 3:04cr74, Docket Entry No. 34). Later, Movant expressed dissatisfaction with his second counsel (Case No. 3:04cr74, Docket Entry No. 48) and the Court appointed additional counsel to answer Movant's questions and to advise him about the motions that Movant wanted to file pro se. (Case No. 3:04cr74, Docket Entry No. 52; Docket Entry No. 232, Oct. 8, 2004 Hearing, Transcript at 7; Docket Entry No. 143, Nov. 18, 2005 Hearing, Transcript at 16-17.)

Later, the Court allowed Movant to file any pro se motions he wished to preclude future claims of ineffective assistance of counsel. (Case No. 3:04cr74, Docket Entry No. 232, Oct. 8, 2004 Hearing, Transcript at 7; Case No. 3:04cr74, Docket Entry No. 143, Nov. 18, 2005 Hearing,

Transcript at 7-13, 16-18, 25-32.) Movant filed 46 motions and letters before trial and at least ten motions and letters after trial. See Case No. 3:04cr74, Docket Entry Nos. 14, 15, 19, 20, 21, 35, 39, 42, 44, 45, 48, 51, 53-57, 59-61, 66, 74, 79, 81-86, 88, 101, 104, 108, 110-111, 113, 121-22, 128, 130, 132, 157, 170, 184, 226, 244, 246, 258, 259, 269, 270, 273.

Movant also filed multiple pro se interlocutory appeals that the Sixth Circuit dismissed. See Case No. 3:04cr74, Docket Entry Nos. 149, 187-88, 190, 216. The district court questioned defense counsel on their preparedness for trial, see Case No. 3:04cr74, Docket Entry No. 143, Nov. 18, 2005 Hearing, Transcript at 18-19, and ordered the government to produce all documents for Movant, see id. at 4, 51-52, ordered defense counsel to review all documents with their clients in the courtroom, id. at 51-52, and instructed defense counsel to consult with their clients, id. at 48, 51-52. Movant later stated that he did not want new counsel (Case No. 3:04cr74, Docket Entry No. 232, Oct. 8, 2004, Transcript at 5-6) and he did not want to represent himself. (Case No. 3:04cr74, Docket Entry No. 227, Dec. 6, 2005, Transcript at 4).

After a two-day trial, a jury returned a guilty verdict against Movant on Counts 1 and 2, related to the drug conspiracy that occurred between April and July 2003. (Case No. 3:04cr74, Docket Entry No. 182). The jury acquitted Movant on Counts 5 and 6 that were drug and firearms charges related to Movant's November 19, 2003 arrest. Id. The Sixth Circuit affirmed Movant's convictions, but remanded for sentencing. Zirker, 253 Fed. Appx. at, 578-79. After remand, the district court sentenced Movant to 130 months imprisonment. (Case No. 3:04cr74, Docket Entry No. 267).

**B. Review of the Record**

3

As to the facts of Movant's convictions on direct appeal the Sixth Circuit made the following factual findings[1]:

> At trial, the government offered the testimony of five witnesses involved with the alleged drug conspiracy, three of whom were already in custody. The first such witness was Nathan Morgan. According to Morgan, the chain of events leading up to the conviction of both Pitts and Zirker began on March 31, 2003, with the arrest of Keith Smith. A major drug trafficker working out of Nashville, Smith had over 50 kilograms of cocaine stashed in a locker rented by Nathan Morgan. In response to Smith's arrest, Morgan contacted his friend Vincent Zirker about the cocaine. *575 Together Morgan and Zirker traveled to the locker and, with the help of a locksmith hired by Zirker, retrieved several suitcases filled with the drug. On April 3, 2003, Zirker registered a new locker in his name and kept a copy of the key.
>
> Morgan further explained that from April until July 2003, he and Zirker were processing the cocaine they had recovered into crack cocaine (known as "cooking") and selling it. Zirker would retrieve the cocaine from the locker, process the cocaine into crack cocaine, and then distribute the product (or proceeds from it) as Morgan directed. In addition to Zirker, Morgan was also assisted by Roosevelt Pitts. Pitts, who lived with Morgan at the AmeriSuites hotel, worked as both a cook and, on several occasions, a distributor. This arrangement lasted from April until July 2003.
>
> The government also called Kevin Lindsley and Dale Jennings, both of whom were facing other drug charges. Lindsley, a customer of Morgan's and a one-time cellmate, testified that he had received a total of four kilograms of cocaine from Morgan and that Zirker had twice handled the deliveries. Jennings, Morgan's driver and occasional roommate, testified that he had observed Zirker prepare an ounce of crack cocaine. Further, Jennings claimed that he repeatedly witnessed Zirker deliver cocaine, usually to him or to Morgan. Two other witnesses also testified to Pitts' involvement in the conspiracy.

---

[1] State appellate court opinion findings can constitute factual findings in a habeas action. <u>Sumner v. Mata</u>, 449 U.S. 539, 546-47 (1981) and have a statutory presumption of correctness. 28 U.S.C. § 2254(e).

4

In addition to witness testimony, the government introduced several items of evidence, including Zirker's storage rental records, phone calls between Zirker and Morgan, and hotel records relating to Morgan.

Finally, the government called police officers to testify as to the November 2003 drug activities. The officers explained that Zirker was stopped in his car while traveling with a passenger on November 19, 2003. During the stop, the passenger fled the car and, with officers in pursuit, threw away a bag containing crack cocaine and heroin. Their suspicions aroused, the police asked Zirker to step out of the car and soon discovered narcotics as well as a firearm under his seat. After Zirker's arrest, a search of the backseat of the police car uncovered more crack cocaine.

Zirker, 253 Fed. Appx. at 574-75.

## B. Conclusions of Law

"[T]he general rule is that the writ of habeas corpus will not be allowed to do service for an appeal." Reed v. Farley, 512 U.S. 339, 354 (1994) (quoting Sunal v. Large, 332 U.S. 174, 178 (1947)). Thus, if Movant failed to raise a claim on direct appeal those claims are procedurally defaulted absent a showing of cause and actual prejudice, Napier v. United States, 159 F.3d 956, 959 (6th Cir. 1998), except for ineffective assistance of counsel claims. Massaro v. United States, 538 U.S. 500, 503 (2003).

In his direct appeal, Movant raised three issues: (1) actual prejudice from the district court's decision denying his motion to sever; (2) the insufficiency of the evidence to support the conviction; and (3) error from the district court's belief that it could not consider the quantity of drugs involved in the defendants' prior convictions to determine whether their offense level overrepresented their criminal histories. Zirker, 253 Fed. Appx. at 576. In sum, Movant did not present any speedy trial claim nor any claim for alleged misinformation in the presentence report.

5

Thus, those claims are procedurally barred absent a showing of "cause" and "actual prejudice." "[C]ause for a procedural default on appeal ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim." Murray v. Carrier, 477 U.S. 478, 492 (1986).

Among his ineffective assistance of counsel claims is Movant's challenge to the Court's speedy trial ruling. (Docket Entry No. 1-1, Petition at 4). Movant's trial counsel filed a motion to dismiss on speedy trial grounds (Case No. 3:04cr74, Docket Entry No. 119) that the Court denied. (Case No. 3:04cr74, Docket Entry No. 135). In any event, there could not be any ineffective assistance of counsel claim based upon a speedy trial issue. As a distinct claim, the speedy trial claim is procedurally barred. This claim lacks merit.

To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that: (1) his counsel was deficient for "[making] errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) he was prejudiced by his counsel's deficient performance because the errors were so serious that the defendant did not receive a fair trial. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish the first Strickland prong, the defendant "must identify the acts or omissions of counsel" that were unreasonable. Id. at 690. To establish the second Strickland prong of actual prejudice, the defendant "'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Hall v. Vasbinder, 563 F.3d 222, 237 (6th Cir. 2009) (quoting Strickland, 466 U.S. at 694). If the defendant fails to make either of these showings, the ineffectiveness claim is defeated. Strickland, 466 U.S. at 700.

In Strickland, the Supreme Court instructed that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" 466 U.S. at 689 (citation omitted). Courts may not "second-guess counsel's assistance after conviction or adverse sentence." Id. Under this standard, Movant fails to demonstrate ineffective assistance of counsel on any basis.

As to Movant's claims that his counsel failed to file pretrial motions or raise claims to the court, the district court allowed Movant to file motions pro se, and appointed additional counsel to answer Movant's questions, even while allowing Movant to be represented by his court-appointed defense attorney. See Case No. 3:04cr74, Docket Entry No. 232, Oct. 8, 2004 Hearing, Transcript at 7. Movant filed at least 24 pre-trial motions pro se. (Case No. 3:04cr74, Docket Entry Nos. 15, 21, 45, 59, 60, 61, 64-66, 81, 83-85, 108, 110-111, 121-22, 128, 130-32, 157, 170), and the district court considered the four claims he now raises. See also Case No. 3:04cr74, Docket Entry No. 143, Nov. 18, 2004 Hearing, Transcript at 5. Thus, Movant's counsel cannot be deemed ineffective for not filing a motion that would have failed. Knuckles v. Rogers, No. 92-3208, 1993 WL 11874, at *4 (6th Cir. Jan 21, 1993) (finding no merit to ineffective assistance of counsel claim based on failure to file a motion to suppress that would have failed) (citing United States v. Madewell, 917 F.2d 301, 304 (7th Cir. 1991)). Accordingly, these claims should be dismissed.

Movant's claims of counsel's failure to conduct discovery involve failure to interview the government's witnesses. Yet, defense counsel interviewed all witnesses relevant to the case. (See Docket Entry No. 1-1, Petition at 4, 12-13 (claim (d)); Case No. 3:04cr74, Docket Entry No. 143, Nov. 18, 2005 Hearing, Transcript at 19; Docket Entry No. 23-1, Edwards Declaration, ¶¶ 8, 11.) Defense counsel also had proffer statements and in court statements of witnesses. Movant does not identify any additional information counsel could have learned. Accordingly, this claim fails to state a basis for relief.

As to his counsel's failure to meet with him before trial on November 18, 2005, Movant's defense counsel affirmed his extensive communications with Movant that was more than on other cases. See Case No. 3:04cr74, Docket Entry No. 143, November 18, 2005 Hearing, Transcript at 49. The district court questioned defense counsel on their preparedness for trial, id. at 18-19, ordered the government to produce all documents for Movant, see id. at 4, 51-52, ordered defense counsel to review all documents with their clients in the courtroom, id. at 51-52, and instructed defense counsel to consult with their clients, id. at 48, 51-52. Movant later stated that he did not want new counsel (Case No. 3:04cr74, Docket Entry No. 232, Oct. 8, 2004 Hearing, Transcript at 5-6) and he did not want to represent himself. (Case No. 3:04cr74, Docket Entry No. 227, Dec. 6, 2005 Hearing, Transcript at 4). This claim lacks merit.

As to his trial counsel's ineffectiveness for not objecting to certain testimony, Movant cites: (1) the lack of objections or impeachment of Lindsley and Morgan's testimony whose testimony conflicted on the amount of cocaine Movant delivered; (2) that Lindsley and Morgan shared a cell after their arrest; (3) the lack of challenges to government evidence that Movant

rented the storage unit; and (4) the lack of objection as to Morgan's testimony that Movant delivered drugs to Pitts and Tillman, as uncorroborated by Tillman.

Morgan testified that Movant delivered two to three kilograms of cocaine to Morgan, six to eight times, during April and May of 2003. (See Case No. 3:04cr74, Docket Entry No. 227, Dec. 6. 2005 Hearing, Transcript at 121-123, 129, 136). Morgan also described a separate request from Smith via Lindsley that Movant was to deliver seven kilograms. Id. at 124-25. Morgan testified that he picked up seven kilograms from Movant on at least four occasions. (Case No. 3:04cr74, Docket Entry No. 228, Dec. 7, 2005 Hearing, Transcript at 87-91.) Lindsley also testified that at Morgan's direction, Movant delivered two kilograms of cocaine to Lindsley on three occasions – twice in April 2003 and once in July 2003. See id. at 6-7. The cited differences in drug quantities actually enhance the credibility of Morgan, Jennings and Lindsley's testimony about Movant's drug trafficking. In any event, the jury was not asked to make specific quantity findings. For defense counsel to cross-examine on these subjects would rehash testimony tying Movant to the drug conspiracy. Thus, this claim fails for lack of merit.

Movant next asserts that his attorney should have objected to proof about the storage unit. Anna Richardson testified that a storage unit was rented in Movant's name. (See Case No. 3:04cr74, Docket Entry No. 227, Dec. 6, 2005 Hearing, Transcript at 101-03). Government's Exhibit 4 is a rental agreement addendum for Abbott Self Storage bearing Movant's name and a copy of his driver's license. Movant's counsel questioned Gloria Sparkman who acknowledged that Movant's name was not on the paperwork. See id. at 113-15; Government's Trial Exhibit 2.

9

Morgan testified that he rented the Shurgard storage unit, id. at 119, and enlisted Movant's assistance after Smith was arrested. This claim lacks merit.

As to counsel's failure to impeach Morgan with Tillman's proffers, Movant contends that Tillman's proffers refute Morgan's testimony that Movant delivered drugs to Pitts and Tillman. In her April 9, 2004 proffer, Tillman stated that she picked up 1.5 kilograms of cocaine and $10,000 to $20,000 from Movant and delivered them to Morgan. Movant's counsel elected to challenge Morgan's credibility on other bases. See id. at 167-68. These decisions involve counsel's strategic decision and is neither proof of ineffectiveness nor prejudicial given that the jury was not required to decide specific quantities.

Next, Movant maintains that his trial attorneys were ineffective for not impeaching Morgan's inconsistent statements about Movant as the sole possessor of the cocaine delivered to Morgan and/or whether someone named "Capone" was also an intermediary between Movant and Morgan. Movant's trial attorney impeached Morgan about whether he had seen Movant at the hotels. See id. at 167-69; see also Docket Entry No. 23-1, Edwards Declaration ¶ 10. With this challenge to Morgan's credibility, Movant's counsel could elect not to question Morgan about whether Morgan received cocaine from "Capone." Cf. Blackburn v. Foltz, 828 F.2d 1177, 1183 (6th Cir. 1987) (counsel deficient for not identifying inconsistent testimony where "weakening [the witness's] testimony was the only plausible hope for [the defendant's] acquittal"). Yet, the Court concludes that given the proof at Movant's trial any omission by his counsel would not be prejudicial, as required under Strickland. 466 U.S. at 689.

As to counsel's failure to object to the jury instruction on direct and circumstantial evidence, Movant cites Williams v. United States, 321 F.2d 744 (D.C. Cir. 1963). In Williams, the district court gave this instruction: "If you see the track of an animal, a rabbit, in the snow, you *know* a rabbit has been there just as well as if in fact you saw the rabbit." Williams, 321 F.2d at 746 (emphasis added). The District of Columbia Circuit found this instruction improper because it "may have implied that the jury could infer guilt from circumstances without first resolving conflicts in testimony over whether the circumstances occurred." Id. Yet, here the instruction was the following:

> The term evidence includes direct and circumstantial evidence and includes the sworn testimony of witnesses and exhibits that are admitted into the record. Direct evidence is testimony of one who actually observes an event and reports his or her observations. Circumstantial evidence is proof of a chain of circumstances that proves the existence or nonexistence of other facts.
>
> For example, **if you were to see a rabbit's footprint in the snow, you could infer** and, therefore, find that at some point a rabbit had been there, even though you didn't actually see the rabbit. That is an example of circumstantial evidence.

(Case No. 3:04cr74, Docket Entry No. 227, Dec. 6, 2005 Hearing, Transcript at 82). The words "*if*" one saw a rabbit's footprint in the snow, the jury "*could infer*" circumstantial evidence that a rabbit had been there differ from the Williams instruction that "you know a rabbit has been there," 321 F.2d at 746, if you see a rabbit's footprint. Moreover, here the Court also instructed the jury that "you must decide which testimony to believe and which testimony not to believe," and listed factors the jury should consider when deciding credibility. (Case No. 3:04cr74, Docket Entry No. 227, Dec. 6, 2005 Hearing, Transcript at 84-85.) The Court's final jury instructions without the rabbit's footprint analogy cured any issue about its preliminary instruction.

11

> The evidence includes direct and circumstantial evidence. Direct evidence is the testimony of one who asserts actual knowledge of a fact, such as an eye witness. Circumstantial evidence is proof of a chain of facts and circumstances indicating [ ] either the guilt or innocence of the defendant. The law makes no distinction about the weight given to either direct or circumstantial evidence. It requires only that you weigh all of the evidence and be convinced of the defendant's guilt beyond a reasonable doubt before he can be convinced.
>
> So, while you should consider only the evidence in the case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you think are justified in the light of common experience. In other words, you may make deductions and reach conclusions which reason and common sense lead you to draw from the facts which have been established by the evidence in the case. The government, however, cannot pile inference upon inference to prove its case. The evidence, whether direct or circumstantial, must establish each element of the offense beyond a reasonable doubt.

Case No. 3:04cr74, Docket Entry No. 230, Dec. 7, 2005 Hearing Transcript at 173. Cf. Williams, 321 F.2d at 746 (finding that even though the jury instruction was improper, the error was not plain error because the instructions on the whole were sufficient to instruct the jury about the need to assess the credibility of witnesses). The jury instructions as a whole, and the weight of the government's evidence, negate Movant's argument that his counsel was ineffective in this regard. In any event, Movant's counsel employed the "rabbit's footprint" instruction to challenge the government's evidence in his closing argument. See Case No. 3:04cr74, Docket Entry No. 229, Dec. 7, 2005 Hearing, Transcript at 152, 153. This claim lacks merits and Movant cannot establish any prejudice from this instruction.

Movant's next claim is that his counsel failed to present mitigating evidence as Movant requested. This mitigating evidence was cited as: (1) a compact disk mentioning Morgan's downward departure; (2) a letter from Abbott Self Storage stating that it did not have any record

of any storage unit in Movant's name; (3) a letter from Morgan to the government expressing willingness to cooperate in exchange for a downward departure; and (4) Morgan's April 8, 2004 proffer statement..

As to Morgan's cooperation, Pitts's and Movant's defense attorneys questioned Morgan about his cooperation with the government and the benefits he expected to receive for his cooperation. (See Case No. 3:04cr74, Docket Entry No. 227, Dec. 6, 2005 Hearing, Transcript at 145-147; 165; see also Dec. 6, 2005 Hearing, Transcript at 142.) Smith questioned Morgan about the information on the CD. See Dec. 6, 2005 Hearing, Transcript at 165. Presentation of the actual compact disk and Morgan's letter would be cumulative evidence and such presentation would not change the result of Movant's trial. As to the Abbott Self Storage letter, Movant does not provide this letter. Government's exhibit four at trial is a Rental Agreement Addendum from Abbott Self Storage with Movant's name, and a copy of his driver's license. As to defense counsel's decision not to introduce Morgan's fourth proffer into evidence, the proof was inadmissible as evidence. See Fed. R. Evid. 613 ("Extrinsic evidence of a prior inconsistent statement by a witness is not admissible . . . ."). Movant's attorney questioned Morgan about the proffer. This claim lacks merit.

For his counsel's failure to object to the verdict form or to request a supplemental "beyond a reasonable doubt" jury instruction, Movant does not identify any defect in the verdict form. Given the Court's preliminary and final jury instructions on the meaning of "beyond a reasonable doubt, this claim is also meritless." (Case No. 3:04cr74, Docket Entry No. 227, Dec.

6, 2005 Hearing, Transcript at 84 (preliminary jury instruction); Case No. 3:04cr74, Docket Entry No. 230, Dec. 7, 2005 Hearing, Transcript at 171-172, 177-179 (final jury instructions)).

Movant also contends that the indictment was "constructively [a]mended" to eliminate the "knowingly" and "intentionally" elements of the possession offense (Count 2). The Court instructed the jury that 21 U.S.C. § 841(a)(1) required proof that the defendant "*knowingly and intentionally*, to possess with the intent to distribute a controlled substance."
(Case No. 3:04cr74, Docket Entry No. 230, Dec. 7, 2005 Hearing, Transcript at 197; see also id. at 189-190 (knowingly and intentionally defined); id. at 198 (instructing jury to apply previously given definition of knowingly and intentionally)). Thus, this claim lacks merit.

Movant next cites his counsel's failure to object to the Government's closing argument, but fails to identify any specific statements as improper. (See Docket Entry No. 1-1, Petition 5, 16 (claim(1)); Docket Entry No. 23-1, Edwards Declaration ¶ 17). This claim lacks merit.

Movant's Brady v. Maryland, 373 U.S. 83 (1963) claim is based on Morgan's rental agreement and the alleged false testimony of government agents. The government had an open file policy and provided defense counsel, and Movant access to all documents in its possession, well before trial began. See Case No. 3:04cr74, Docket Entry No. 143, Nov. 18, 2005 Hearing, Transcript at 6. Assuming this document exists, the Court found that the government already had disclosed everything in its possession. (See Case No. 3:04cr74, Docket Entry Nos. 60 (motion for bill of particulars or Brady disclosure) & 92 (order); Case No. 3:04cr74, Docket Entry No. 143, Nov. 18, 2004 Hearing, Transcript at 13-14.) Movant lacks any evidence that the government

withheld any documents. See Docket Entry No. 23-1, Edwards Declaration ¶ 18. The jury credited the agents' testimony. This claim lacks merit.

Movant's next claim cites his counsel's failure to raise mitigating evidence at the preliminary hearing. "A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial." Barber v. Page, 390 U.S. 719, 725 (1968); see Fed. R. Crim. P. 5.1(e); accord Buttino v. Hamtramck, 87 Fed. Appx. 499, 504 (6th Cir. 2004) ("[A] preliminary hearing concerns the sufficiency of the evidence to establish probable cause . . . ."). The Sixth Circuit has recognized that preliminary hearings "as a practical matter provide a defendant with an irreplaceable opportunity for discovery." United States v. Woods, 544 F.2d 242, 249 (6th Cir. 1976). Thus, counsel can hardly be ineffective for failing to uncover mitigating evidence before the preliminary hearing.

Movant was arrested on April 20, 2004 (Case No. 3:04cr74, Docket Entry. No. 2), and the preliminary hearing occurred just three days later on April 23, 2004 (Case No. 3:04cr74, Docket Entry No. 7). At the hearing, Nashville police officer James Benny Goodman, a DEA Task Force Officer, adopted Special Agent Ron Riddle's affidavit because Riddle and ATF Case Agent Wayne Kilday were unavailable. (Case No. 3:04cr74, Docket Entry No. 63, Apr. 23, 2004 Hearing, Transcript at 3-4.) Zirker's then-attorney, Jerry Gonzalez, cross-examined Goodman about the contents of the affidavit, id. at 4-10, and the Magistrate Judge found probable cause existed to sustain the charges. Id. at 12. See Stewart v. Taylor, No. 85-3547, 1985 WL 14133, *1 (6th Cir. Dec. 16, 1985) (unpublished) (counsel not ineffective where he "rigorously participated

in the proceeding and did all that was possible to protect the interests of [the defendant] in cross-examining the witness"). The Court cannot discern any ineffectiveness of counsel at the preliminary hearing.

As to defense counsel's failure at trial to raise and move to strike a photographic identification, Movant cites the photograph's border as including Movant's full name, and (2) counsel's absence when law enforcement originally showed the photograph to Jennings. See Docket Entry No. 1-1, Petition at 5, 20-22 (claim (q)). An unduly suggestive identification process may violate due process. See Howard v. Bouchard, 405 F.3d 459, 469 (6th Cir. 2005); Kenne v. Mitchell, 525 F.3d 461, 465 (6th Cir. 2008) (suggestive photo array does not violate due process if, under the totality of the circumstances, the identification was reliable). Yet, ATF Special Agent Wayne Kilday testified at trial that when he showed the photograph to Jennings, he covered up Movant's name, and showed other photographs at the same time. (Case No. 3:04cr74, Docket Entry No. 229, Dec. 7, 2005 Hearing, Transcript at 112-113). In any event, Movant's attorney questioned Jennings about Movant's name appearing on the photograph:

> Q. Okay. Now, the government showed you that picture, didn't they?
> A. In September of 2004.
> Q. Right. And at the top of the picture, the name Vincent Zirker appears, doesn't it?
> A. Yes, sir. Yes, it does.
> Q. And that's how you identified Mr. Zirker, isn't it?
> A. Yes.
> Mr. Edwards: Your honor, I would ask that that be marked as the next defendant's exhibit.
> The Court: Without objection, it will be Defendant Zirker Exhibit 4.
> Mr. Edwards: And we would move for its admission, Your Honor.
> The Court: Without objection, it will be admitted.

(Case No. 3:04cr74, Docket Entry No. 228, Dec. 7, 2005 Hearing, Transcript at 97-98). In closing argument, Smith reminded the jury that Movant's name was on top of the picture from which Jennings identified Movant. (Case No. 3:04cr74, Docket Entry No. 229, Dec. 7, 2005 Hearing, Transcript at 129). Given these challenges to Jennings's credibility and the validity of his identification of Movant, it was hardly ineffective for his attorney to not move to strike the photograph. There is no right to counsel at photo lineups. United States v. Ash, 413 U.S. 300, 321 (1973). In sum, this claim also should be dismissed.

Movant next cites his counsel's failure to object to alleged misinformation in the presentence report on drug quantity, but the Court did not make any findings on drug quantity. See also United States v. Booker, 543 U.S. 220, 233 (2005) ("[W]hen a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant."); U.S.S.G. § 6A1.3 cmt. ("The Commission believes that use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case."). The probation officer calculated Movant's base offense level as 12 – based on the smallest quantity listed on the drug quantity table. The jury found that Movant was responsible for less than five kilograms of cocaine and did not make findings about a specific drug quantity.2 In these circumstances, the Court concludes that Movant's defense counsel was not ineffective.

---

2 Although the Sixth Circuit vacated Zirker's original sentence and remanded for resentencing, this was based on the Court's classification of Zirker as a career offender.

17

Movant next cites his counsel was not objecting to the admission of the drugs and guns during the testimony of Charles Ray Blackwood and Michael Baker. In questioning Baker, Movant's attorney elicited testimony that Baker had noted the wrong serial number for the gun in his report. (See Case No. 3:04cr74, Docket Entry No. 228, Dec. 7, 2005 Hearing, Transcript at 66-68; see also Docket Entry No. 23-1, Edwards Declaration ¶ 7). On cross-examination of Blackwood, Movant's attorney solicited testimony that the gun did not contain any link to Movant. (See Case No. 3:04cr74, Docket Entry No. 228, Dec. 7, 2005 Hearing, Transcript at 83). The gun pertained to charges surrounding Movant's November 19, 2003 arrest and the jury acquitted him of both counts related to that incident. Accordingly, this claim lacks merit.

Movant's final challenge is that his appellate counsel failed to raise a Fourth Amendment violation based upon an agent's alleged fraudulent statements at the April 23, 2004 preliminary hearing. Yet, "there can be no constitutional deficiency in appellate counsel's failure to raise meritless issues." Mapes v. Coyle, 171 F.3d 408, 413 (6th Cir. 1999); see also Smith v. Murray, 477 U.S. 527, 536 (1986) ("[T]h[e] process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.") (quoting Jones v. Barnes, 463 U.S. 745, 751-52 (1983)).

Moreover, Movant litigated this claim in a civil action under 42 U.S.C. §§ 1983 and 1985. See Zirker v. Metro Nashville Police Dep't, No. 3:07-0378, 2009 WL 1010910 (M.D. Tenn. Apr. 14, 2009) (Griffin, Mag. J.) (Report and Recommendation), adopted and approved by 2009 WL 1119486 (M.D. Tenn. Apr. 27, 2009) (Campbell, J.). Significantly, the Court noted that

"[a]fter review of the entire record and the evidence before the Court, the Court concludes that the Plaintiff's allegations [that the arresting officers caused "false and fictitious evidence" to be used against him] are wholly unsupported." 2009 WL 1010910, at *7. Appellate counsel could not be ineffective for not raising a meritless claim. This claim lacks merit.

For these reasons, the court concludes that this action should be dismissed with prejudice for failure to state a basis for any relief under Section 2255.

An appropriate Order is filed herewith.

Entered this the 22nd day of November, 2011.

William J. Haynes, Jr.
United States District Judge